Jeanne Gianoukos                                           File No. WEL-RIDGEWAY  Page #2

## Uniform Residential Appraisal Report

SUMMARY REPORT
File # WEL-RIDGEWAY

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address  4 Ridgeway Road | City  Wellesley | State  MA   Zip Code  02481 |

Borrower Client: Douglas R. Stiles    Owner of Public Record   Douglas R. Stiles Co., LLC    County  Norfolk

Legal Description   Norfolk Registry of Deeds

Assessor's Parcel #  M:71/L:35    Tax Year  2006    R.E. Taxes $  17,280.64

Neighborhood Name  N/A    Map Reference  6E    Census Tract 4042.00/1120

Occupant ☐ Owner ☒ Tenant ☐ Vacant    Special Assessments $  0.00    ☐ PUD   HOA $ N/A   ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)  Opinion of market value

Lender/Client   Douglas R. Stiles    Address   66 Draper Road, Wayland, MA 01778

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s).    N/A

**CONTRACT**

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   N/A

Contract Price $  N/A    Date of Contract  N/A    Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)  N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.    N/A

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE $ (000) | AGE (yrs) | One-Unit | 100 % |
| Built-Up ☐ Over 75% ☒ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | 1,750  Low | 1 | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | 3,000  High | 115 | Multi-Family | % |
| | | | | Commercial | % |
| | | 2,000  Pred. | 65 | Other | % |

Neighborhood Boundaries    Northerly: Weston town line; Easterly: Dean Road; Southerly: Glen Road; Westerly: Cliff Road.

Neighborhood Description    The subject dwelling is located on quiet residential street in northeast Wellesley, near the Weston town line, within close proximity of numerous amenities that include shopping, banking, restaurants and service stations. There were no negative factors noted at the time of inspection. The area has good access to highways such as Routes 30 and 128. There is also good access to public transportation in the area.

Market Conditions (including support for the above conclusions)    The market conditions in the community were stable at the time of inspection. Interest rates were favorable at the time of inspection. Refinance activity is strong due to the lower interest rates. The typical home is selling on the open market within a three month period with conventional financing.

**SITE**

Dimensions  Irregular    Area  25,900 SF +/-    Shape  Irregular    View  Neighborhood

Specific Zoning Classification SRD 20    Zoning Description  20,000 SF + 60 FF

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street  Asphalt | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley  None | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone  C    FEMA Map #  250255-0005B    FEMA Map Date  09/05/1979

Are the utilities and off-site improvements typical for the market area?   ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   ☒ Yes ☐ No  If Yes, describe

There is a footway easement located along the left lot line at the dwelling's formal front entrance. The subject dwelling sits sideways on the lot with the formal front entrance situated at Glen Road and the side entrance located at the end of a long driveway that has frontage on Ridgeway Road. Site is landscaped and well maintained.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls   Concrete/Avg | Floors   Hardwood/Good |
| # of Stories  2.75 | ☒ Full Basement ☐ Partial Basement | Exterior Walls   Wood Siding/Good | Walls   Skimcoat/Good |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area  2,222 sq.ft. | Roof Surface   AsphaltShingle/Good | Trim/Finish   Wood/Good |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish  -0- % | Gutters & Downspouts  Aluminum/Good | Bath Floor   Marble/Good |
| Design (Style)   Col./Avg | ☒ Outside Entry/Exit ☐ Sump Pump | Window Type  Double Hung/Good | Bath Wainscot  Marble/Good |
| Year Built  2003 | Evidence of ☐ Infestation | Storm Sash/Insulated  Yes/Avg | Car Storage ☐ None |
| Effective Age (Yrs)  2 | ☐ Dampness ☐ Settlement | Screens   Yes/Avg | ☒ Driveway  # of Cars  4-6 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # | Driveway Surface   Asphalt paved |
| ☐ Drop Stair ☐ Stairs | ☐ Other  Fuel  Gas | ☒ Fireplace(s) # 4 ☐ Fence | ☒ Garage  # of Cars  3 |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck Deck ☒ Porch Open | ☐ Carport  # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☒ Att. ☐ Det. ☐ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:   11  Rooms   5  Bedrooms   4.5  Bath(s)   5,970  Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).   Four fireplaces, deck, open porch, central air conditioning, three car attached garage.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   Subject dwelling is a well maintained colonial style home in overall good condition. The kitchen and baths are modern. No functional or external inadequacies were noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   ☒ Yes ☐ No  If No, describe

Freddie Mac Form 70 March 2005                Page 1 of 6                Fannie Mae Form 1004 March 2005

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. WEL-RIDGEWAY  Page #3

## Uniform Residential Appraisal Report

SUMMARY REPORT
File # WEL-RIDGEWAY

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| There are | 4 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 1,700,000 | | to $ 2,750,000 | | | |
| There are | 5 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,700,000 | | to $ 2,750,000 | | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 4 Ridgeway Road | 33 Rutgers Road | | 19 Salem Road | | 8 Burnett Lane | |
| | Wellesley | Wellesley | | Wellesley | | Wellesley | |
| Proximity to Subject | | 1.71 miles | | 1.47 miles | | 1.00 miles | |
| Sale Price | $ N/A | $ 2,195,000 | | $ 1,813,750 | | $ 1,732,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 430.39 sq.ft. | | $ 450.06 sq.ft. | | $ 364.79 sq.ft. | |
| Data Source(s) | | Broker/Assessors | | Broker/Assessors | | Broker/Assessors | |
| Verification Source(s) | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Conv. Financing | | Conv. Financing | | Conv. Financing | |
| Date of Sale/Time | | 1/17/06 | | 4/14/06 | | 3/03/06 | |
| Location | Good | Good | | Good | | Sl. Inferior | +85,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 25,900 SF | 15,000 SF | | 32,002 SF | | 22,492 SF | |
| View | Typical | Typical | | Typical | | Typical | |
| Design (Style) | Col./Avg | Col./Avg | | Col./Avg | | Col./Avg | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 3 Years | 1 Year | | 43 Years | +50,000 | 1 Year | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 11 / 5 / 4.5 | 12 / 5 / 5.5 | -6,000 | 10 / 5 / 3F2 | +12,000 | 10 / 5 / 4.5 | |
| Gross Living Area | 5,970 sq.ft. | 5,100 sq.ft. | +39,200 | 4,030 sq.ft. | +87,300 | 4,748 sq.ft. | +55,000 |
| Basement & Finished | Full/ | Full/ | | Full/ | | Full/ | |
| Rooms Below Grade | Unfinished | Unfinished | | Part Finished | -7,500 | Unfinished | |
| Functional Utility | Average | Superior | -75,000 | Superior | -75,000 | Superior | -75,000 |
| Heating/Cooling | Std/CAC | Std/CAC | | Std/CAC | | Std/CAC | |
| Energy Efficient Items | None Known | None Known | | None Known | | None Known | |
| Garage/Carport | 3 Car Att. | 3 Car Att. | | 2 Car Att. | +3,000 | 3 Car Att. | |
| Porch/Patio/Deck | Deck, Porch | Similar | | Similar | | Similar | |
| Fireplace | 4 Fireplaces | 2 Fireplaces | +4,000 | 2 Fireplaces | +4,000 | 1 Fireplace | +6,000 |
| Kitchen & Bath | Modern K/B | Modern K/B | | Modern K/B | | Modern K/B | |
| Other | None | None | | Fitness Cabana | -7,500 | None | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 37,800 | ☒ + ☐ - | $ 66,300 | ☒ + ☐ - | $ 71,000 |
| Adjusted Sale Price of Comparables | | | $ 2,157,200 | | $ 1,880,050 | | $ 1,803,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   Assessors Office, B&T, MLS
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   Assessors Office, B&T, MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | None Noted | None Noted | None Noted | None Noted |
| Price of Prior Sale/Transfer | within 36 months | within last 12 months | within last 12 months | within last 12 months |
| Data Source(s) | Assessors, B&T | Assessors, B&T | Assessors, B&T | Assessors, B&T |
| Effective Date of Data Source(s) | 7/05/2006 | 7/05/2006 | 7/05/2006 | 7/05/2006 |

Analysis of prior sale or transfer history of the subject property and comparable sales     The subject has not sold in last 36 months. Comps have not sold in the past 36 months, other than as noted above.

Summary of Sales Comparison Approach     All comps adjusted for functional obsolescence. The subject dwelling's formal front entrance faces Glen Road and the side entrance is located at the driveway access which faces Ridgeway Road. The formal front entrance is located close to the street and is obscured with shrubbery. Consequently, the side entrance, which has access on Ridgeway Road, appears to be the main entrance. This awkward egress is adjusted for functional obsolescence. Comp #2 adjusted for difference in age by difference in estimated accrued depreciation. Comp #3 adjusted for location in less desirable neighborhood. An adjustment of $45 per SF was made for difference in size. An adjustment of $2,000 per fixture is used for difference in bath size. All other adjustments as noted.

Indicated Value by Sales Comparison Approach $ 1,900,000

Indicated Value by: Sales Comparison Approach $ 1,900,000     Cost Approach (if developed) $ 1,908,138     Income Approach (if developed) $ N/A

Most weight given to the sales comparison approach which is considered the most reliable approach. This approach is further supported by the cost approach. Income approach not applicable due to the lack of single family rental data.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  This is a summary appraisal report. No liability is assumed for structural or mechanical defects. Assumes clear and marketable title.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,900,000 , as of July 5, 2006 , which is the date of inspection and the effective date of this appraisal.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

SUMMARY REPORT
File # WEL-RIDGEWAY

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   Land value determined from land allocation method.

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 600,000 |
| Source of cost data   Local builders and cost manuals | DWELLING | 5,970 Sq.Ft. @ $ | 200.00 | =$ | 1,194,000 |
| Quality rating from cost service  Good      Effective date of cost data  2006 | Bsmnt. | 2,222 Sq.Ft. @ $ | 50.00 | =$ | 111,100 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Appliances, FP, Porch, Deck, CAC | | | =$ | 50,000 |
| Costs were derived from the Marshall & Swift Valuation Service. | Garage/Carport | 893 Sq.Ft. @ $ | 50.00 | =$ | 44,650 |
| | Total Estimate of Cost-New | | | =$ | 1,399,750 |
| Depreciation based on age/life method. | Less    Physical    Functional    External | | | | |
| Site valuation derived from market extraction. | Depreciation    46,612    75,000 | | | =$( | 121,612) |
| Functional depreciation due to lack of conventional egress. | Depreciated Cost of Improvements | | | =$ | 1,278,138 |
| | "As-is" Value of Site Improvements | | | =$ | 30,000 |
| Subject's estimated remaining economic life is 60 years. | | | | | |
| Estimated Remaining Economic Life (HUD and VA only)       58 Years | INDICATED VALUE BY COST APPROACH | | | =$ | 1,908,138 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

Estimated Monthly Market Rent $     N/A     X Gross Rent Multiplier     N/A     = $     N/A     Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)     N/A

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No   Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project   Not a P.U.D

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005          Page 3 of 6          Fannie Mae Form 1004 March 2005

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

SUMMARY REPORT
File # WEL-RIDGEWAY

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

File No. WEL-RIDGEWAY  Page #6

## Uniform Residential Appraisal Report

SUMMARY REPORT
File # WEL-RIDGEWAY

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Freddie Mac Form 70 March 2005                    Page 5 of 6                    Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

SUMMARY REPORT
File # WEL-RIDGEWAY

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER    Jeanne Gianoukos | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Jeanne Gianoukos | Name |
| Company Name | Company Name |
| Company Address  201 Prospect Street, Wakefield, MA 01880 | Company Address |
| Telephone Number  781-367-1016 | Telephone Number |
| Email Address  pcgmit@mac.com | Email Address |
| Date of Signature and Report  July 06, 2006 | Date of Signature |
| Effective Date of Appraisal  July 5, 2006 | State Certification # |
| State Certification #  Certified General #639 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  MA | |
| Expiration Date of Certification or License  11-02-08 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
| 4 Ridgeway Road | ☐ Did inspect exterior of subject property from street |
| Wellesley, MA 02481 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  1,900,000 | ☐ Did inspect interior and exterior of subject property |
| LENDER/CLIENT | Date of Inspection |
| Name  Douglas R. Stiles | |
| Company Name  Douglas R. Stiles | COMPARABLE SALES |
| Company Address  66 Draper Road, Wayland, MA 01778 | |
| | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address  pbrooks@seyfarth.com | Date of Inspection |

## SUPPLEMENTAL ADDENDUM

File No. WEL-RIDGEWAY  Page #8
File No.    WEL-RIDGEWAY

| Borrower/Client    Client: Douglas R. Stiles | | | |
|---|---|---|---|
| Property Address   4 Ridgeway Road | | | |
| City  Wellesley | County  Norfolk | State  MA | Zip Code  02481 |
| Lender | | | |

Due to the lack of similar sales within the immediate area, the appraiser has been forced to expand the search to include sales located greater than one mile from the subject property.  These sales are located in similar neighborhoods and are considered the best sales available for comparison purposes.

## SUPPLEMENTAL ADDENDUM

| Borrower/Client    Client: Douglas R. Stiles | | | |
|---|---|---|---|
| Property Address   4 Ridgeway Road | | | |
| City   Wellesley | County   Norfolk | State   MA | Zip Code   02481 |
| Lender | | | |

**Appraisal Process and Report**

A summary report has been provided which is intended to comply with the reporting requirements set forth under standards rule 2-2 (b) of the Uniform Standards of Professional Appraisal Practice.  As such, it presents a summarized evaluation of the data, reasoning and analysis used in th appraisal process to develop an opinion of value.

**Limitations of Appraiser Liability, Liability to Potential Buyers, Sellers, Loan Applicants and Other Third Parties**

This appraisal report (including any data, opinion of market value, certification and statement) is being performed exclusively for the benefit of and at the request of Jeanne Gianoukos' client, Douglas R. Stiles.  Said appraisal and opinion of market value is rendered exclusively for the protection of and use by the client .  This appraisal and opinion of market value  shall not be utilized or relied upon by any buyer, seller, loan applicant or any other third  party, and no contract shall be deemed to exist between said individuals and the appraiser.

**Competency of the Appraiser**

The appraiser hereby certifies that she has the appropriate knowledge and experience to complete this appraisal assignment competently.  The appraiser's qualifications are maintained in the file and can be provided upon written request.

**Scope of the Appraisal**

Information pertaining to the subject property was gathered from an inspection of the on 7/05/2006 and the Assessor's records.  Information on the comparable sales utilized in this report was obtained from exterior driveby inspection, MLS and Assessor's records.

**Digital Signatures**

The signature affixed to this report and certification were applied by the original appraiser and  represents her acknowledgement of the facts, opinions, and conclusions found in the report.  The appraiser applied her signature electronically using a password encrypted method.  Hence, the signature has safeguards and carries the same validity as the individual's hand-applied signature.  If the report has a hand-applied signature, this comment does not apply.

**Deed Not Reviewed**

It should be noted that a copy of the deed for the subject property has not been provided to the appraiser by the client. Additionally, in completing the scope of the work associated with this appraisal assignment, the appraiser was not required to independently obtain a copy or the deed or review the deed. Accordingly, the opinion of the market value presented herein assumes that the deed for the subject property is free and clear of all encumbrances and restrictions, and contains no provisions that could negatively impact the marketability of the subject property or the opinion of market value presented herein.

**USPAP Compliance**

In order to be in compliance with USPAP, any reference made within the appraisal report to an "estimate of market value" shall be construed by the reader to be the Appraiser's opinion of market value as applied to the subject property.

File No. WEL-RIDGEWAY  Page #10

## Subject Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client   Client: Douglas R. Stiles | | | |
| Property Address  4 Ridgeway Road | | | |
| City   Wellesley | County  Norfolk | State  MA | Zip Code  02481 |
| Lender | | | |



**Subject Front**
4 Ridgeway Road
Sales Price    N/A
GLA           5,970
Total Rooms   11
Total Bedrms  5
Total Bathrms 4.5
Location      Good
View          Typical
Site          25,900 SF
Quality       Average
Age           3 Years



**Subject Rear**



**Subject Street**

File No. WEL-RIDGEWAY| Page #11

## Comparable Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client   Client: Douglas R. Stiles | | | |
| Property Address  4 Ridgeway Road | | | |
| City   Wellesley | County  Norfolk | State  MA | Zip Code  02481 |
| Lender | | | |



### Comparable 1
33 Rutgers Road
Proximity    1.71 miles
Sale Price   2,195,000
GLA          5,100
Total Rooms  12
Total Bedrms 5
Total Bathrms 5.5
Location     Good
View         Typical
Site         15,000 SF
Quality      Average
Age          1 Year



### Comparable 2
19 Salem Road
Proximity    1.47 miles
Sale Price   1,813,750
GLA          4,030
Total Rooms  10
Total Bedrms 5
Total Bathrms 3F2
Location     Good
View         Typical
Site         32,002 SF
Quality      Average
Age          43 Years



### Comparable 3
8 Burnett Lane
Proximity    1.00 miles
Sale Price   1,732,000
GLA          4,748
Total Rooms  10
Total Bedrms 5
Total Bathrms 4.5
Location     Sl.Inferior
View         Typical
Site         22,492 SF
Quality      Average
Age          1 Year

Form PIC4x6.CR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. WEL-RIDGEWAY Page #12

**Building Sketch**

| Borrower/Client | Client: Douglas R. Stiles | | | | |
|---|---|---|---|---|---|
| Property Address 4 Ridgeway Road | | | | | |
| City Wellesley | | County Norfolk | State MA | Zip Code 02481 | |
| Lender | | | | | |



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 2352.00 | 2352.00 |
| GLA2 | Second Floor | 2606.00 | 2606.00 |
| GLA3 | Third Floor | 1012.00 | 1012.00 |
| | | | |
| | **TOTAL LIVABLE    (rounded)** | | **5970** |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 18.0 x | 23.0 | 414.00 |
| 13.0 x | 24.0 | 312.00 |
| 4.0 x | 13.0 | 52.00 |
| 16.0 x | 61.0 | 976.00 |
| 13.0 x | 46.0 | 598.00 |
| Second Floor | | |
| 24.0 x | 26.0 | 624.00 |
| 10.0 x | 18.0 | 180.00 |
| 36.0 x | 42.0 | 1512.00 |
| 10.0 x | 29.0 | 290.00 |
| Third Floor | | |
| 22.0 x | 46.0 | 1012.00 |
| **10 Calculations Total (rounded)** | | **5970** |

Form SKT.BldSkI — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. WEL-RIDGEWAY| Page #13

## Location Map

| Borrower/Client | Client: Douglas R. Stiles | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4 Ridgeway Road | | | | | |
| City | Wellesley | County | Norfolk | State | MA | Zip Code | 02481 |
| Lender | | | | | | |



**Flood Map**

| Borrower/Client   Client: Douglas R. Stiles | | | |
|---|---|---|---|
| Property Address  4 Ridgeway Road | | | |
| City   Wellesley | County   Norfolk | State   MA | Zip Code   02481 |
| Lender | | | |

