UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SORRELL HOMES, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOUGLASS R. STILES CO. LLC AND DOUGLASS R. STILES, <br><br> Defendants. | Civil Action <br> No. 04-CV10260 WGY |

**PLAINTIFF'S OPPOSITION TO DEFENDANT DOUGLASS R. STILES' MOTION TO VACATE OR MODIFY JUDGMENT**

**Introduction and Summary.**

Plaintiff Sorrell Homes, Inc. ("Sorrell Homes") hereby opposes the motion of defendant Douglass R. Stiles ("Stiles") to vacate or modify the default judgment entered against him well over a year ago. The motion should be denied because (i) where, as here, it would not be timely under Fed. R. Civ. P. 60(b)(1), Stiles may not resort to Fed. R. Civ. P. 60(b)(6) in the absence of extraordinary circumstances, not present in this case, demonstrating that he is faultless in the delay in contesting this matter, (ii) it fails to set forth evidence establishing a meritorious defense that would change the outcome of the case, (iii) contrary to Stiles' contention, the relief set forth in the default judgment is exactly the relief requested in the Complaint, (iv) whatever harm that now results from the entry of Judgment is not the result of unforeseen changed conditions, but rather conditions easily foreseeable by Stiles and created by Stiles, and (v) the motion is procedurally defective in that Stiles has not complied with Local Rule 7.1.[1]

---

[1] Although Stiles' papers, notably filed on July 14, 2006, oddly refer to a scheduled July 13, 2006 foreclosure sale and request expedited consideration of the motion based on the "imminent" foreclosure sale, Stiles fails to note that the scheduled sale has been postponed by the bank until September 11, 2006.

**Argument.**

I.   **THE MOTION IS UNTIMELY UNDER RULE 60(b).**

After a Judgment by Default has been entered, it may be set aside only in accordance with the provisions of Rule 60(b).  Fed. R. Civ. P. 55(c).  Rule 60(b) provides that a motion seeking relief from a judgment be brought in any event within "a reasonable time" and if asserted on certain grounds, including based on "excusable neglect" under Rule 60(b)(1), within one year after judgment.[2]  Apparently recognizing that the one year period for seeking relief due to "excusable neglect" has expired, Stiles relies on Rule 60(b)(6) ("any other reason justifying relief") for his motion.[3]  Stiles is not, however, the first litigant to attempt to avoid the fatal implications of the one year limit on seeking relief by attempting to rely on Rule 60(b)(6) rather than Rule 60(b)(1), and the First Circuit Court of Appeals has repeatedly, and as recently as several weeks ago, emphasized that "a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)."  *Blanchard* v. *Cortes-Molina*, 2006 U.S. App. LEXIS 16310 *9 (1st Cir. June 29, 2006) (internal quotation and citation omitted).  In order to justify relief under Rule 60(b)(6), "a party must show extraordinary circumstances suggesting that the party is faultless in the delay" and relief based on a party's own neglect is not available even if the neglect is excusable.  *Id*.  Thus, relief would be available after one year only if the default judgment was due to "extraordinary circumstances beyond the party's control."  *Claremont Flock Corp.* v. *Alm*, 281 F.3d 297, 300 (1st Cir. 2002)

---

[2]  What is considered a "reasonable time" in situations where the one-year limitation does not apply depends on the circumstances of the particular case and requires consideration of the length of delay in presenting the motion and the justification for the delay.  *Farm Credit Bank* v. *Ferrera-Goitia*, 316 F.3d 62, 66 (1st Cir. 2003).

[3]  Stiles also seeks relief under Rule 60(b)(5) ("it is no longer equitable that the judgment should have prospective application").  That provision applies to changes in condition unforeseeable at the time of judgment that make continued enforcement of the judgment inequitable and is addressed in Section IV below.

(where default judgment attributable to the party's own negligence, he is limited to seeking relief under Rule 60(b)(1)).

In this case, the default, and the failure to take any action for well over a year following the default judgment, was attributable to Stiles' knowing decision to allow the default to enter, not some extraordinary circumstance beyond his control. Stiles acknowledges that he was aware of the action and of the entry of default and of the default judgment, but explains that, because of "a severe financial downturn" as a result of his divorce, he "[a]t the time this action was filed." was "unable to engage counsel." He acknowledges that he was aware of the suit and "allowed a default to be entered against him." Motion at ¶3.

Indeed, not only is the proffered excuse of inability to engage counsel not sufficient to constitute the extraordinary circumstances necessary for relief under Rule 60(b)(6), it falls short of "excusable neglect" that could justify relief under Rule 60(b)(1). *See, e.g., King* v. *Galluzzo Equipment & Excavating, Inc.*, 223 F.R.D. 94, 98 (E.D.N.Y. 2004) (inability to retain counsel does not serve as an acceptable excuse under Rule 60(b); where a party "makes no effort to appear pro se or explain his situation to opposing counsel and the court, such neglect is inexcusable"). *See also*, *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 822 (2d Cir. 1967) (where a showing of lack of funds to litigate would have been insufficient to justify relief under Rule 60(b)(1), no need to "labor the point" in analysis under "extremely meagre scope" of Rule 60(b)(6)).

Notably, even if Stiles' representation that he did not defend based on an inability to retain counsel could be viewed as sufficient to establish either excusable neglect under Rule 60(b)(1), or even the higher "faultless in the delay" standard of Rule 60(b)(6), the facts simply do not support his representation that he had no access to counsel. In fact, a partner of Stiles'

3

current counsel at Seyfarth Shaw LLP executed the Waiver of Service of Summons on behalf of Stiles (*see* Docket Entry 7) and for the better part of a year following the filing of the Complaint, there were extensive communications between counsel for Sorrell Homes and Stiles' counsel regarding possible resolution of the matter, the anticipated filing of an Answer, and the impending default resulting from the failure to respond to the Complaint. *See* Hardcastle Affidavit dated February 17, 2005 (Docket Entry 23).[4]

## II. THE MOTION FAILS TO PROFFER EVIDENCE SHOWING THAT STILES COULD PREVAIL ON THE MERITS OF THE COPYRIGHT CLAIM AT SSUE.

Described by the First Circuit Court of Appeals as a "sentry that guards the gateway to Rule 60(b) relief" is the requirement that the moving party, as a pre-condition to relief under the rule, "give the trial court reason to believe that vacating the judgment will not be an empty exercise." *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992). The moving party must, in other words, "establish that it possesses a potentially meritorious claim or defense." *Id.* at 21. To do so requires "more than an unsubstantiated boast" or conclusory allegations. *Id.* (*citing Augusta Fiberglass Coatings, Inc.* v. *Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) ("meritorious defense requires a proffer of evidence which would permit a finding for the [movant]")).

Stiles, however, has proffered no evidence that would support the conclusion that vacating the judgment could result in a different outcome on the merits. The statement in paragraph 3 of Stiles' Motion that "[Stiles] believed that he had a good defense because he

---

[4] Not only do the communications between counsel over a period of many months call into question Stiles' representation that he was "unable to engage counsel," the specific communications between counsel regarding the need for Stiles to file an Answer and the impending default process demonstrate that Stiles was far from unaware of the implications of failing to defend the action.

4

had evidence that the plaintiff's plans were not original, but in fact had been misappropriated by the plaintiff from another architect or designer" is exactly the type of conclusory allegation that the First Circuit Court of Appeals has emphasized is not sufficient to satisfy the moving party's burden. Stiles has presented nothing but a bald general allegation in a pleading unaccompanied by detail or evidence. Indeed, conspicuously absent from the affidavit of Stiles submitted with his motion is any reference to the purported misappropriation. Sorrell Homes has, on the other hand, previously presented the Court with evidence showing that the architectural design in question is its own original copyrighted work. *See* Affidavit of Timothy Sorrell dated February 17, 2005 (Docket Entry 12).

Stiles simply has not met his burden of establishing that he has a meritorious defense to the copyright claim.

### III.    THE RELIEF SET FORTH IN THE DEFAULT JUDGMENT WAS REQUESTED IN THE COMPLAINT AND IS EXPRESSLY PROVIDED FOR UNDER FEDERAL COPYRIGHT LAW.

In support of his request that the Court grant relief from the injunctive relief set forth in the Default Judgment "so as to permit the sale of the property," Stiles states that "[s]ignificantly, the injunction sought was not relief requested in the complaint." Motion at ¶4. That statement is simply wrong. In the Complaint, which sets forth a single count of architectural copyright infringement in connection with the unauthorized use by the defendants of copyrighted architectural drawings to construct the subject house at 4 Ridgeway Road, Wellesley, Massachusetts (the "Infringing House"), Sorrell Homes repeatedly identifies the nature and the legal basis for the injunctive relief sought. *See, e.g.*, Complaint at ¶1 ("Sorrell Homes is seeking damages and injunctive relief"); Complaint at ¶50 (Sorrell Homes "is entitled pursuant to 17 U.S.C. § 502 to injunctive relief enjoining further acts of infringement, including … the marketing or selling of the Infringing House"); Prayer for Relief ¶1 ("[e]njoin defendants

preliminarily and permanently from …marketing or selling the Infringing House"); Prayer for Relief ¶2 ("[e]njoin defendants preliminarily and permanently from …further acts of infringement of Sorrell Homes' copyrighted architectural works").

Not only was the injunctive relief granted by the Court requested, it is relief expressly made available to copyright holders under Federal copyright law, codified at 17 U.S.C. §1, *et seq.* (the "Copyright Act"), to prevent continued acts of infringement on the exclusive rights belonging to the owner of a copyright, including the exclusive right to "vend" copies of the copyrighted work.

The Copyright Act protects owners of certain works of authorship from unauthorized copying or reproduction of protected works and from distribution of unauthorized copies. Copyright protection extends to eight categories of authorship, the last of which, architectural works, was added by the Architectural Works Copyright Protection Act of 1990. 17 U.S.C. §102(a). The Copyright Act defines "architectural work" as follows:

> An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. §101. By broadly defining architectural work to include not only plans, but also buildings constructed using the design, the Copyright Act now makes clear that the ownership right in a design extends to a building constructed using the protected design. *See, e.g., The Yankee Candle Co., Inc.* v. *New England Candle Co., Inc.*, 1997 U.S. Dist. LEXIS 23099, *12 (D. Mass. 1997) ("[i]t is plain from this definition that copyright protection extends to architectural blueprints and the building embodying those blueprints"). While architectural designs fell under other categories of protected authorship before 1990, the 1990 Act expanded

6

the protection by giving the author a copyright interest not just in the plans embodying the design, but also in a building embodying the design.

The Copyright Act provides the owner of a copyright certain exclusive rights, including the right to distribute copies of the copyrighted work "by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. §106(c). One who violates any of the exclusive rights of a copyright owner is an "infringer" within the meaning of the Copyright Act. 17 U.S.C. § 501. 17 U.S.C. § 502 expressly provides for temporary and permanent injunctions as appropriate remedies to prevent or restrain infringement of a copyright. Sorrell Homes has sought and obtained an injunction preventing Stiles from infringing on its exclusive right to "vend" copies of its copyrighted architectural work. It has every right to the injunctive relief it obtained and Stiles has no right to sell the Infringing House simply because he now has decided that the remedy imposed over a year ago as a result of his unauthorized use of copyrighted architectural drawings has become a hardship because he now would like to sell the Infringing House.

### IV.    THERE ARE NO CHANGES IN CIRCUMSTANCES THAT MAKE IT INEQUITABLE FOR THE JUDGMENT TO BE ENFORCED.

Under Rule 60(b)(5), a judgment may be vacated if "it is no longer equitable that the judgment have prospective application." As a threshold matter, it is important to note that the provision of Rule 60(b)(5) quoted above that is relied on by Stiles is intended to address cases, such as those involving institutional reform litigation, involving "long-term supervision of changing conduct or conditions" where "prospective requirements may be rendered inappropriate by unforeseen changes in circumstances subsequent to the entry of the order." *The Paul Revere Variable Annuity Insurance Co.* v. *Zang*, 248 F.3d 1, 7 (1st Cir. 2001). Although the rule has been applied to modify private contractual consent decrees as well as institutional reform litigation involving long-term supervision, courts impose a more difficult standard of changed

7

circumstances in modifying such private decrees "that lack substantial bearing on the public interest" than they do in considering modifications to institutional reform decrees. *Id.* Presumably, the reluctance to apply Rule 60(b)(5) in anything but the most compelling circumstance is a function of the general reluctance of the courts to disturb final judgments. Although Stiles suggests that Rule 60(b)(5) has application to an injunction issued as part of a default judgment, he identifies no case involving such expansive application and the explanation of the rule in the *Zang* case suggests that application of the rule to a situation such as this would be unlikely.

In any event, there are no "changed circumstance" that would justify relief under Rule 60(b)(5). Stiles was adjudged to have committed an act of copyright infringement and as a result was enjoined from vending the Infringing House pursuant to 17 U.S.C. § 502. The only real changed circumstance is that Stiles now wishes to sell the house, something that would constitute a further act of infringement on Sorrell Homes' copyright. That may be a hardship, but it is not a new hardship and it is not inequitable.

Stiles suggests, in paragraph 9 of his motion, that the purpose of Sorrell Homes' request for injunctive relief was to "deprive Stiles of profit," and that circumstances have changed because he no longer is in a position to make a profit by selling the Infringing House because he apparently has defaulted on a $2 million 30-year mortgage loan he obtained in October 2004 (while this matter was pending) even though he apparently has a tenant paying rent.[5] In so

---

[5] While Stiles attaches what he refers to in his affidavit as a letter from the lender providing information about the loan and the current balance, the document actually appended provides no such information and instead appears to be merely a form request from the bank for information about rental income in connection with a workout arrangement. The mortgage involved is, however, a matter of public record recorded at Book 21652, Page 441 at the Norfolk County Registry of Deeds on October 15, 2004. That public record refers to a $2 million note dated October 8, 2004. Although not particularly relevant to the pending motion, it is the understanding of Sorrell Homes from the present tenant that the lease agreement provides for monthly rent in the amount of $6,000.00.

arguing, Stiles demonstrates a misunderstanding of the purpose of injunctive relief under the Copyright Act.[6] Such relief is not dependent on an infringer's ability to make a profit, but rather is available to prevent acts of infringement. In this case, the act of vending, *i.e.*, selling, renting, or otherwise conveying an interest in the Infringing House, is the future infringing conduct that is prevented by the injunction. Nothing about that has changed since the Judgment was entered.[7]

Indeed, while Stiles makes much of the potential harm to third parties if he is not allowed to sell the Infringing House, he fails to note that any purchaser of the property would inherit the copyright problem, even if they purchased the property without knowledge of Sorrell Homes' copyright interest in the house. Sorrell Homes' exclusive right to "vend" would not be eliminated because a buyer innocently acquired the property before it learned of Sorrell Homes' copyright interest and the buyer would have no legal right to itself sell or lease the property. *See, e.g., Kieselstein-Cord* v. *Accessories by Pearl, Inc.*, 489 F. Supp. 732, 737 (S.D.N.Y. 1980), *rev'd on other grounds*, 632 F.2d 989 (2d Cir. 1980) (if copyright exists, defendant's sale of unauthorized copy establishes liability and lack of knowledge of the copyright interest is no defense). Of course, had Stiles properly acquired the right to use the protected design to

---

[6] He also jumps to an unjustified and unsupported conclusion regarding the question of profit. That Stiles was able to obtain a $2 million 30-year mortgage loan not long before judgment was entered in this matter does not mean that was his cost basis and that he, therefore, realizes no profit unless he sells the house for more than that. Although not germane to this motion, the investigation of Sorrell Homes suggests that Stiles' costs in constructing the Infringing House were substantially less than $2 million. It has long been the belief of Sorrell Homes that Stiles was content to allow the injunction to stand and ultimately default on the loan, having managed to take close to, if not more than, the market value out of the property by pocketing the loan proceeds and the rental income and leaving the bank with the house and associated copyright problems. That he now seeks to have the injunction lifted, even though he claims no proceeds will flow to him, seems to indicate that he may be feeling the heat from the bank, perhaps including with respect to the disclosures, or lack thereof, made by Stiles when he obtained the loan.

[7] To the extent that Stiles' default on his loan could be viewed as the "changed circumstance" relied upon for relief, it would be insufficient because that change was in the control of, and caused by, Stiles. *See*, *Zang*, 248 F.3d at 7 (no relief under Rule 60(b)(5) where change of circumstances within the control and caused by party requesting relief).

construct and sell the subject home, under the "first sale doctrine," which limits a copyright owner's control of the right to vend to the initial sale, Sorrell Homes would not have the right to prevent or restrict a resale or subsequent transfer of the property.

The real change in circumstances since the Judgment was entered is that Stiles now finds the Judgment inconvenient because it prevents him from engaging in a further act of copyright infringement. That does not justify relief under Rule 60(b)(5).

## V.     STILES HAS NOT COMPLIED WITH LOCAL RULE 7.1.

Local Rule 7.1(A)(2) mandates that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to narrow the issue." Stiles' counsel has not filed the required certification and has not conferred at all with opposing counsel. Sorrell Homes emphasizes this omission not only to highlight the obvious procedural deficiency, but also because the permanent injunction contained in the Default Judgment is not absolute. The Default Judgment specifies that Stiles is enjoined from vending the Infringing House "unless and until authorized in writing by plaintiff to do so." Having failed even to attempt to work out an arrangement with Sorrell Homes that would allow the sale of the Infringing House, Stiles' resort to the Court for relief is inappropriate.

**Conclusion.**

For the reasons set forth above, Sorrell Homes respectfully requests that the Motion of Defendant Douglass R. Stiles to Vacate or Modify Judgment be denied.

                    SORRELL HOMES, INC.

                    By its attorneys,

                    /s/ Joseph F. Hardcastle
                    Joseph F. Hardcastle (BBO# 559479)
                    Cintra S. Shober (BBO # 560120)
                    HARDCASTLE & SHOBER
                    50 Congress Street, Suite 314
                    Boston, MA  02109
                    (617) 248-2240
                    jfh@hardcastleshober.com

July 17, 2006

Certificate of Service

I hereby certify that this document and the accompanying affidavits and Form of Default Judgment have been filed through the ECF system, which will send notification of such filing to the attorney of record in this matter for defendant Stiles.

                    /s/ Joseph F. Hardcastle
                    Joseph F. Hardcastle (BBO #559479)
                    50 Congress Street, Suite 314
                    Boston, MA 02109
                    (617) 248-2240
                    jfh@hardcastleshober.com