UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SORRELL HOMES, INC., <br><br>                          Plaintiff, <br><br> v. <br><br> DOUGLASS R. STILES CO. LLC AND DOUGLASS R. STILES, <br><br>                          Defendants. | Civil Action <br> No. 04-CV10260 WGY |

**PLAINTIFF'S OPPOSITION TO DEFENDANT DOUGLASS R. STILES' MOTION FOR THE COURT TO DETERMINE THE AMOUNT OF A ONE-TIME LICENSE FEE OWED TO PLAINTIFF**

**Introduction.**

Plaintiff Sorrell Homes, Inc. ("Sorrell Homes") hereby opposes the motion of defendant Douglass R. Stiles ("Stiles") in which he requests that the Court "determine the amount of a one-time license fee owed to the plaintiff."  As set forth below, Stiles in his motion mischaracterizes the nature of this architectural copyright infringement matter, the history of dealings between the parties, the relief sought and obtained in the case, and the current status of the case.  He also failed to comply with the procedural requirements of Local Rule 7.1 for the filing of the motion. He simply is not entitled to the relief sought and his motion should be denied.

In brief, there is no license fee owed to the plaintiff that must be determined by the Court. This case ended with Judgment in favor of Sorrell Homes in the form of a permanent injunction prohibiting Stiles from selling or otherwise using the infringing house without the authorization of Sorrell Homes, an injunction the Court recently confirmed as being appropriate and deserved. Sorrell Homes repeatedly has emphasized to Stiles and to the Court its desire to negotiate a reasonable monetary resolution that would allow Stiles to sell the house.

Indeed, at the recent hearing before the Court, Sorrell Homes assented to the Court's suggested modification to the injunction, which now provides that Sorrell Homes will not unreasonably withhold its authorization to allow Stiles to sell the infringing house. That does not mean, however, that Stiles, as he suggests, can avoid entirely the consequences of his blatant misappropriation of copyrighted architectural plans simply by paying what he views to be a reasonable license fee after being caught and found liable on a copyright infringement claim. To require a copyright infringer if caught only to pay an amount that a court determines would have been a fair license fee for use of the work actually could encourage copyright infringement. Fortunately, the remedies available for an act of copyright infringement are not so limited. What Sorrell Homes reasonably may insist upon now in exchange for allowing Stiles to sell the infringing house will depend on a number of considerations, including the monetary relief available from an infringer in a copyright action and the legal expense incurred in having to bring this action and, notably, to respond to the post-judgment motion practice now being engaged in by Stiles.

In fact, it is Stiles, not Sorrell Homes, who has not acted reasonably or pursued negotiations in good faith by making a $1,000.00 settlement offer that is well below the amount he previously stated was his view of the value of the plans and offered to Sorrell Homes <u>before</u> he lost the case. Instead of actually negotiating in good faith with Sorrell Homes, Stiles' strategy appears to be to (i) force Sorrell Homes to incur the expense and aggravation of dealing with his series of post-judgment motions in the hope that Sorrell Homes will tire of the process, and (ii) hope that the Court will not fully grasp the history of the interaction between the parties and give Stiles relief to which he is not entitled.

**Argument.**

As a threshold matter, Stiles' motion is procedurally defective in that he once again has failed to comply with Local Rule 7.1 before filing a motion. The failure is particularly egregious in this case because the very relief Stiles is seeking is court intervention due to the failure of the parties to successfully negotiate a resolution as suggested by the Court when it denied Stiles' earlier motion to vacate the permanent injunction entered against him. Stiles' efforts to resolve the matter consisted of nothing more than a two-line letter offering a $1,000.00 payment (Exh. A to Stiles' Motion). Sorrell Homes responded to the "offer" by reminding Stiles that he had made, and Sorrell Homes had rejected, a $25,000.00 offer before Stiles lost the case, by emphasizing its continuing interest in reaching a reasonable resolution, and by questioning Stiles' sincerity in pursuing resolution in light of his offer (Exh. B to Stiles' Motion). Stiles did not then contact Sorrell Homes to try to work out differences or even to confer as required by Local Rule 7.1 before seeking relief from this Court, but instead simply filed this motion.

Further, in an apparent effort to frame this matter as one in which the Court should determine "the amount of the one-time license fee owed to the plaintiff for the use of its plans," Stiles mischaracterizes both the relief sought in this action and the prior dealings of the parties. In support of the contention in his motion that this case was brought to recover an unpaid license fee and that he should be ordered to pay $1,000.00 for authority to sell the infringing house, Stiles states that he previously paid to Sorrell Homes a $1,000.00 license fee "for the use of the same architectural plans in the construction of another home" and that Sorrell Homes in this action alleged "that Stiles should have paid additional monies to the plaintiff to use the plan for the design of another single-family home." Stiles has misstated the claims asserted by Sorrell Homes in this action and the facts underlying those claims. He also ignores that the scope of relief available for copyright infringement.

3

In 1998, Sorrell Homes licensed, expressly for one use only, the subject New England Gambrel house design to a company with which Stiles was involved (Sorrell Aff. at ¶6, Exh. C).[1] Compensation for the one-time use of the design was not, as Stiles now claims, simply a $1,000.00 license fee, but a $1,000.00 payment plus hourly fees for design and consulting services provided (Sorrell Aff. at ¶7). In any event, when Stiles later approached Sorrell Homes about obtaining a second license for another project on the same terms, Sorrell Homes refused because what Stiles paid for the first use was "well below the value of the design" (Sorrell Aff. at ¶10). At that time, Sorrell Homes insisted upon different terms whereby its fee would be a percentage of the sale price of the completed home (*Id*.). In essence, Sorrell Homes gave Stiles a favorable introductory price, but declined to repeat it. Not willing to pay the higher fee insisted upon by Sorrell Homes, Stiles, who had access to plans from his earlier one-time license, simply used the plans without permission to construct the house that is the subject of this action, presumably thinking that Sorrell Homes would never find out (Sorrell Aff. at ¶¶11-14).[2]

Before filing this action, Sorrell Homes made a number of fruitless attempts to resolve the copyright infringement issue with an unwilling Stiles. (Sorrell Aff. at ¶21). During the litigation, Stiles conveyed through his present counsel's partner a settlement offer, which was rejected by Sorrell Homes, of $25,000.00, based on Stiles' stated position "that even though they were not custom plans, the fair value is around $25,000.00." See offer attached hereto as **Exhibit A**. In light of that background, Stiles' recent $1,000.00 license fee proposal to Sorrell

---

[1] In referring to the claims and evidence presented in this case, Sorrell Homes will cite to its Complaint filed in this action (Docket Entry 1) and to the affidavit of Timothy Sorrell filed with the Court at the same time (Docket Entry 4).

[2] The architect used by Stiles to reproduce the design acknowledged that he copied the Sorrell Homes drawings given to him by Stiles and explained that he relied on Stiles' representation that he had obtained permission from Sorrell Homes to reuse the design drawings for another project. (Sorrell Aff. at ¶¶16-17, Exhs. I, J).

4

Homes falls far short of good faith negotiation and is downright insulting. What Stiles is suggesting is that despite his flagrant misappropriation and use of copyrighted design plans, despite his own admission that the plans are worth far more than $1,000.00, despite forcing Sorrell Homes to litigate its copyright claim, and despite losing that litigation, he now should be permitted to walk away by paying less than the amount he initially offered, and Sorrell Homes refused, when he sought to obtain a second license for the design.

Moreover, in suggesting that the Court simply set the amount of a license fee, Stiles also ignores the relief available to a successful copyright claim litigant. Permanent injunctive relief such as that obtained by Sorrell Homes is available pursuant to 17 U.S.C. § 502 to prevent or restrain infringement of a copyright. If the plaintiff seeks to recover monetary damages, 17 U.S.C. § 504 provides for recovery from an infringer not only of actual damages, but also profits of the infringer attributable to the infringement. One who infringes on an architectural copyright therefore faces monetary exposure well beyond the market value of the plans in question. *See, e.g., Danielson, Inc.* v. *Winchester-Conat Properties, Inc.*, 322 F.3d 26, 47 (1st Cir. 2003) (identifying profits as the principal damages in architectural copyright infringement case). The Complaint filed in this action made clear that, with respect to money damages, Sorrell Homes would be seeking to recover not only actual damages, but also profits to which it would be entitled pursuant to 17 U.S.C. § 504 (Complaint at ¶52). Thus, any monetary resolution of the case (as opposed to the injunctive relief actually meted out) would require consideration of the costs associated with construction of the infringing house and an actual or anticipated sale price. Indeed, settlement discussions between the parties prior to and during this litigation recognized this and centered on the gathering of information relating to project costs. See correspondence attached hereto as **Exhibit B**. Ultimately, Stiles refused to provide the cost information sought

5

by Sorrell Homes and Sorrell Homes therefore obtained injunctive relief preventing a sale of the house rather than seeking profit damages. Sorrell Homes took that approach based on its belief and understanding that at some point Stiles, or his bank, or somebody else, would be looking to sell the house and would be interested in pursuing in good faith with Sorrell Homes the settlement discussions it repeatedly has sought to encourage.

Finally, Stiles' motion should be viewed for what it is – a late attempt to open and re-litigate a case that is over. This matter was closed well over a year ago following final judgment against Stiles enjoining him from committing further acts of copyright infringement, including by selling the infringing house, "unless and until authorized in writing by plaintiff to do so." The Court, at the October 18, 2006 hearing on Stiles' motion to vacate the judgment against him, emphasized that the injunctive relief obtained was appropriate and deserved. It also, however, emphasized its concern that Stiles have an opportunity to obtain the authorization referenced in the Judgment. To that end, and after confirming that Sorrell Homes had no objection, the Court modified the injunction by adding a provision that plaintiff's authorization is not to be unreasonably withheld. Sorrell Homes had no objection to the modification because its goal always has been to work out a reasonable monetary resolution to the matter. The Court did not, as Stiles now contends, indicate that it would determine the amount of an appropriate one-time license fee. What it did do was leave open the possibility of reviewing whether Sorrell Homes has unreasonably withheld authorization to allow Stiles to sell the infringing house. Sorrell Homes has not done so.

**Conclusion.**

For the reasons set forth above, Sorrell Homes respectfully requests that Stiles' motion be denied.

SORRELL HOMES, INC.

By its attorney,

/s/ Joseph F. Hardcastle
Joseph F. Hardcastle (BBO# 559479)
HARDCASTLE & SHOBER
50 Congress Street, Suite 314
Boston, MA  02109
(617) 248-2240
jfh@hardcastleshober.com

December 5, 2006

Certificate of Service

I hereby certify that this document and the accompanying affidavits and Form of Default Judgment have been filed through the ECF system, which will send notification of such filing to the attorney of record in this matter for defendant Stiles.

/s/ Joseph F. Hardcastle
Joseph F. Hardcastle (BBO #559479)
50 Congress Street, Suite 314
Boston, MA 02109
(617) 248-2240
jfh@hardcastleshober.com