Exhibit B

# HARDCASTLE & SHOBER
### ATTORNEYS AT LAW
141 Tremont Street, Boston, MA 02111

JOSEPH F. HARDCASTLE
jfh@hardcastleshober.com

TELEPHONE: (617) 423-9990
FACSIMILE: (617) 423-0671

October 23, 2003

**BY FACSIMILE and FIRST CLASS MAIL**

Thomas C. Grassia, Esq.
Grassia, Murphy & Lupan
5 Commonwealth Road
Natick, MA 01760

    Re:   *Sorrell Homes, Inc.*
            *Architectural Copyright Infringement Claim against*
            *Douglass R. Stiles Co. LLC and Douglass R. Stiles*

Dear Tom:

    My client and I have had the opportunity to review available information concerning the 4 Ridgeway Road project, including the materials you sent in connection with the bank loan and other publicly available information concerning the project costs. I also have been able to speak with Ned Gaughan at The Bank of Canton, as you authorized me to do. Finally, we are aware that both the 4 Ridgeway Road property and the adjacent 2 Old Colony Road property are on the market, with the 4 Ridgeway property listed at $2,295,000.00 and the Old Colony Road property listed at $1,495,000.00.

    Although there remain a number of pieces of information that we still need in order to complete our due diligence on the project cost numbers, it is our hope that we can resolve the copyright infringement issues quickly. Now that the properties have been listed, time is of the essence for several reasons. First, it is hard to imagine that any sale can be closed with the copyright issue still outstanding, even if your client chooses to attempt to finalize a sale without our authorization. Based on Mr. Stewart's admission that your client instructed him to copy my client's copyrighted architectural work, for which your client had a single use license for the construction of the 71 Claypit Hill Road house that expressly prohibited any further use of the work without written authorization, this is an open and shut copyright liability case. Any buyer of the infringing house at 4 Ridgeway Road will, if the copyright issue is not resolved, inherit certain copyright infringement problems, including the significant issue of the buyer's liability in connection with a subsequent sale of the infringing house. The copyright infringement claim is therefore a material fact that both the seller and broker have a legal duty to disclose to any potential buyer. If for some reason the copyright infringement issue has not been disclosed to the broker, I ask that you let me know immediately. Further, even if a sale could be closed with

Thomas C. Grassia, Esq.
October 23, 2003
Page 2

the infringement claim unresolved, we are not prepared to let that happen and certainly are not authorizing your client's sale of the infringing house. As I previously informed you, we are prepared to commence formal legal action to protect our rights if this matter cannot be resolved. That said, I think we can agree that it is in everyone's interest to reach an agreement resolving the infringement issue and sell the house as soon as possible.

Because the measure of damages in an architectural copyright infringement case is the profit made from the sale of the infringing work, any settlement is going to be based on the expected profits from the sale of the house. The first step in the process must, therefore, involve reaching common ground as to the cost part of the equation. In your October 9 letter you suggest that the cost figure is approximately $1.9 million, or the amount outstanding on the Bank of Canton Note ($1,660,000.00) plus approximately $200,000.00 in interest on the note. Our investigation reveals that number to be significantly in excess of the actual cost attributable to the construction of the infringing house.

There are two basic components to the cost number – land acquisition cost and actual construction cost. As we understand it, the $1,660,000.00 you use would be broken down as follows:

| | |
|---|---|
| $750,000.00: | land acquisition cost; |
| $50,000 - $60,000.00: | site preparation cost, consisting largely of the cost of moving the pre-existing structure from the 4 Ridgeway Road parcel to 2 Old Colony Road parcel; and |
| $850,000.00 - $860,000.00: | actual construction cost. |

The fundamental problem with the claimed land acquisition cost is that it allocates far too much of the acquisition cost of the former 2 Ridgeway Road land and building used for the 4 Ridgeway Road project and the 2 Old Colony Road project to the 4 Ridgeway Road project. The two projects reflect a split of the original 2 Ridgeway Road property purchased by your client in 2000 for $1,000,000.00. The land split is for practical purposes even; the 4 Ridgeway Road property has a 25,900 square foot lot and the 2 Old Colony Road property has a 23,360 square foot lot. Moreover, the $1,000,000.00 purchase price reflected not just the land cost but also the price paid for the existing house, the Royal Barry Wills house that is now being offered on the 2 Old Colony Road property for a sale price of $1,495,000.00. Allocating three quarters of the total land and house acquisition cost to the 4 Ridgeway Road project when the land was divided equally and the house went to the Old Colony property simply cannot be justified. For purposes of settlement discussions, we believe use of a $350,000.00 land acquisition cost to the Ridgeway Road property is more than fair under the circumstances.

The site preparation cost has a similar problem. This component of the claimed costs apparently consists primarily of an even split between the two projects of the cost of moving the Royal Barry Wills house from its original location to the 2 Old Colony Road property. While that may well have been a perfectly justifiable cost, particularly in light of the asking price for

Thomas C. Grassia, Esq.
October 23, 2003
Page 3

the Old Colony Road property, it is not a cost that should be divided equally between the two properties for allocation purposes. The simple reality is that the house could have been demolished for a fraction of the cost of moving it and the decision to move the house should primarily be allocated to the Old Colony project that benefited from the move. For purposes of settlement discussions, we believe use of a $25,000.00 site preparation cost is not only reasonable but generous under the circumstances.

As to the actual construction cost number, we are skeptical of the accuracy of the $850,000.00 - $860,000.00 figure, in part because there appears to be a general inclination to overstate the costs, and in part because the number just seems very high. We note that the building permit application includes an estimated total construction cost of $530,000.00 for the project. However, the actual construction costs are what they are and can be established for purposes of settlement discussions through the documentation of those costs, *i.e.*, invoices from the subcontractors. Assuming that your client is interested in pursuing settlement discussions, we will need to see copies of the cost documentation as soon as possible. Similarly, we will want to see documentation of the interest paid on the construction loan, of which only the portion attributable to amounts properly allocated to the Ridgeway Road project should be included in the total project cost. I will follow up with you by phone to coordinate getting the documentation.

Once we have documentation of the actual costs and interest payments, we are prepared to discuss a settlement amount in an expedited fashion in order to avoid any unnecessary delay in selling the property. It is important to emphasize that, while my client will have a very strong claim to all profits resulting from the sale of the infringing house should litigation become necessary, we are prepared to compromise that claim in order to avoid litigation. At the same time, we will insist that any settlement include a substantial portion of the expected profits.

In addition to the cost and interest documentation, and confirmation that the listing broker is aware of the infringement claim, what we need to know is whether your client is prepared to settle the matter for payment of a portion (exact percentage/amount subject to further discussion) of the project profits using for the cost component of the calculation (i) our $350,000.00 land acquisition number, (ii) our $25,000.00 site preparation cost number, (iii) documented actual construction costs, and (iv) interest paid that is allocable to the adjusted numbers. Again, we believe time to be of the essence and need your client's response as soon as possible. I will give you a call to discuss the matter further and answer any questions you may have.

Thank you for your cooperation.

Sincerely,

Joseph F. Hardcastle

# HARDCASTLE & SHOBER
### ATTORNEYS AT LAW
141 Tremont Street, Boston, MA 02111

JOSEPH F. HARDCASTLE
jfh@hardcastleshober.com

TELEPHONE: (617) 423-9990
FACSIMILE: (617) 423-0671

December 3, 2003

**BY FACSIMILE and FIRST CLASS MAIL**

Thomas C. Grassia, Esq.
Grassia, Murphy & Lupan
5 Commonwealth Road
Natick, MA  01760

Re:  *Sorrell Homes, Inc.*
*Architectural Copyright Infringement Claim against*
*Douglass R. Stiles Co. LLC and Douglass R. Stiles*

Dear Tom:

At our meeting on November 12, 2003, you informed me that you intended to provide further information regarding the project costs and/or a settlement proposal by the following Monday. Having still not received anything from you, it has become apparent to me, and to my client, that this matter will not be resolved without formal litigation and we are preparing our court papers. Please let me know if you will agree to accept service of the papers on behalf of Douglass R. Stiles Co. LLC and Mr. Stiles.

Also, I understand that Mr. Stiles has attempted to contact Mr. Sorrell directly. As I previously informed you, Mr. Sorrell is not interested in meeting with or communicating directly with Mr. Stiles and prefers that any communications to him with respect to this matter be made to his counsel. Therefore, I ask that you let Mr. Stiles know that Mr. Sorrell does not intend to speak directly with Mr. Stiles and that any communication to Mr. Sorrell should be directed to my office.

Thank you for your cooperation.

Sincerely,

Joseph F. Hardcastle